IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IAN CHADO *et al.*,  *

    Plaintiffs  *

v.  *

                                                                 CIVIL NO. JKB-17-2945

NAT'L AUTO INSPECTIONS, LLC,  *
*trading as* Carchex, *et al.*,
    Defendants  *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MEMORANDUM AND ORDER

### *I. Background*

This case has been reassigned to the undersigned following amendment of the complaint, which resulted in the addition of two new parties who do not consent to the jurisdiction of a magistrate judge to conduct all proceedings in the case. Now pending before the Court is the motion of Defendant Carchex, LLC ("Carchex"), to dismiss the amended complaint. (ECF No. 89.) The motion has been briefed. (ECF Nos. 99, 101.) Also pending before the Court is Carchex's motion to vacate the January 5, 2018, order of reference to a magistrate judge for all proceedings or, alternatively, to sever Carchex from the case. (ECF No. 91.) That motion has also been briefed. (ECF Nos. 100, 102.) No hearing is required for either motion. Local Rule 105.6 (D. Md. 2016). The motions will be denied.

### *II. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### *III. Allegations of the Amended Complaint*

This case is brought pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* Plaintiffs allege they were employed by Defendants, named as National Auto Inspections, LLC, *trading as* Carchex ("NAI"); Carchex, LLC ("Carchex"); and Jason Goldsmith. (Am. Compl. ¶¶ 50, 51.) Plaintiffs all worked from Defendants' call center in Hunt Valley, Maryland. (*Id.* ¶ 104.)

Defendants are engaged in the sale of vehicle-related insurance products, including Extended Vehicle Protection Plans ("EVPP"), roadside assistance plans, and prepurchase inspections. (*Id.* ¶¶ 43, 44.) Defendants also provide assistance to customers for acquisition of car insurance from Defendants' partners. (*Id.* ¶ 44.) Defendants' business model is to own and operate a call center. (*Id.* ¶ 45.) During Plaintiffs' employment, they communicated with

2

consumers in various states for the purpose of making sales. (*Id.* ¶ 49.) Each Plaintiff was employed for various terms as an EVPP Specialist, also known as a Vehicle Protection Specialist (generally referred to as "Specialist"); every Plaintiff's specific term of employment is alleged in the amended complaint. (*Id.* ¶¶ 52-90.) Defendants controlled Plaintiffs' tasks, duties, hours, and rates and methods of pay. (*Id.* ¶¶ 93-97.)

To sell the products offered by Defendants and their partners, Plaintiffs made calls to prospective customers and received calls from prospective customers at the call center. (*Id.* ¶ 105.) Outbound calls were generated from leads provided by direct mail, referrals from Defendants' partners, and potential customers' requests for information through Defendants' website. (*Id.*) During calls with prospective customers, Plaintiffs were required to follow scripts developed by Defendants. (*Id.* ¶¶ 106, 107.)

Defendants compensated Plaintiffs through a complex piece-rate system that incorporated commissions, bonuses, and deductions. (*Id.* ¶¶ 115-128.) The compensation plan provided no additional compensation during weeks in which Plaintiffs worked more than forty hours. (*Id.* ¶ 129.) Regarding the hours Plaintiffs worked, the amended complaint alleges the following:

> 130. Plaintiffs and other Specialists consistently worked over forty (40) hours each week. Working overtime was integral to their employment.
>
> 131. Plaintiffs were scheduled to work a minimum of forty-five (45) hours per week. This was based on working five (5) nine (9) hour shifts Monday through Friday. Each shift was to include a one (1) hour break for lunch, however Plaintiffs and other Specialists routinely worked through lunch to cover Defendants' phones as well as increase their sales numbers.
>
> 132. Plaintiffs and other Specialists were also scheduled to work on the weekends. They all had to work at least one (1) Saturday every three (3) weeks, which was a five (5) to nine (9) hour shift.
>
> 133. During weeks when Plaintiffs and other Specialists were scheduled to work on Saturdays, they had to work a minimum of fifty (50) to fifty-four (54) hours per week. Therefore, Plaintiffs and other Specialists consistently worked between

forty-five (45) and fifty-four (54) hours each week as a result of their regular schedules.

134. Plaintiffs and other Specialists were scheduled to work five (5) nine (9) hour shifts Monday through Friday. The start time for each shift was dependent upon Defendants' needs. Some Specialists would begin their shifts at 8:00 a.m. Others would begin at 9:00 a.m. or 10:00 a.m. Some would begin even later. This resulted in Plaintiffs and other Specialists working staggered shifts.

135. Due to working staggered shifts, the time that Plaintiffs' and other Specialists' shifts ended varied. Depending on the time they actually arrived to work, Plaintiffs and other Specialists would typically leave work between 5:00 p.m. to 8:00 p.m. Due to the demands of their employment, there were times when they left even later.

136. Any time that the calendar days within a month ended on a Saturday or Sunday, Plaintiffs and other Specialists were all required to work that Saturday. They were required to work this extra Saturday in addition to the Saturdays that were already a part of their rotating schedules.[5] These weekend shifts caused Plaintiffs and other Specialists to consistently work far beyond forty (40) hours each week.

137. There were other factors that caused Plaintiffs and other Specialists to work overtime regularly. Defendants fostered a competitive atmosphere amongst its Specialists. Defendants pushed its Specialists to increase their production by any means necessary. This was accomplished through its pay structure, which focused primarily on production. The various bonuses Defendants offered its Specialists were based on high productivity.

138. Defendants encouraged its Specialists to put in extra hours in order to produce more and more. Defendants stressed the importance of striving to go far beyond simply meeting minimum sales goals in order to earn extra money. Defendants' bonus structure was developed in order to encourage its employees to work long hours.

139. The financial incentives prompted many Specialists to work extended hours. They would routinely report to work prior to when their shifts were scheduled to begin. They would regularly leave work after the time their shifts were scheduled to end.

---

[5] During the week, although Defendants occasionally allowed Plaintiffs and other Specialists to come in two (2) hours late each day to make up for the mandatory Saturday shift, Plaintiffs and other Specialists seldom, if ever, took advantage of this opportunity. This resulted from both the threats and incentives employed by Defendants to encourage its

Specialists to increase their production. For Saturdays that fell at the end of the month, this scheduling opportunity was not offered to Specialists.

---

140. It was also common for Plaintiffs and other Specialists to work on their days off. Some Specialists worked every Saturday in an attempt to increase their sales numbers. Many worked more Saturdays than their schedules required in hopes of earning bonuses. The same caused Plaintiffs and other Specialists to come in early and stay late.

141. Plaintiffs and other Specialists also routinely worked through their scheduled lunches. They rarely took their one (1) hour break. This too was for purposes of increasing their production. The potential to earn bonuses led Plaintiff and other Specialists to non-stop.

142. Bonus potential also caused Plaintiffs and other Specialists to work from home. They consistently worked from home both before and after their scheduled shifts, in addition to days they were scheduled to be off. Although Defendants' hours of operation were from 9:00 a.m. to 9:00 p.m. Monday through Friday, the time Plaintiffs and other Specialists were required to accept incoming calls, Defendants did not need to be open for business in order for its Specialists to be working. This was because their duties did not solely consist of accepting inbound calls; Plaintiffs' and other Specialists' primary duty was to make outbound calls, which did not require Defendants' business to be open.

143. To perform their duties, all that Plaintiffs and other Specialists needed was a working phone, a computer and an internet connection. Specialists had access to these resources at home. It enabled them to make contacts with potential customers at all times during the day. Making sales to potential customers was the crux of a Specialist's duties. Thus, working from home became a routine part of their employment. This further increased the total number of overtime hours worked by Plaintiffs and other Specialists.

144. Plaintiffs and other Specialists worked overtime for other reasons. They routinely worked hours outside of their schedules in order to make up for past or current deficits. Making up for these deficits caused Plaintiffs and other Specialists to regularly come in early and stay late. These conditions also caused them to frequently work on their days off.

145. Specialists were disciplined for not meeting Defendants' minimum sales goals. To avoid disciplinary action, Plaintiffs and other Specialists were required to sell a minimum of thirty-five (35) EVPPs each month. Meeting this requirement was an arduous task. It forced Plaintiffs and other Specialists to work hours outside of their schedule.

146. If Specialists failed to meet the minimum threshold for two (2) consecutive months, they were labeled as an "employee at risk." If an employee at risk failed to reach the thirty-five (35) EVPP minimum for a third (3rd) month, the employee was terminated.

147. Fear of termination caused Plaintiffs and other Specialists to work extra hours. This threat caused them to routinely work hours outside of their schedule. This included working additional days.

148. As a result of these conditions, Plaintiffs and other Specialists worked well over forty (40) hours each week. They consistently worked as many as fifty-five (55) to sixty-five (65) hours each week. There were times when they worked even more.

149. Despite the fact that Plaintiffs and other Specialists consistently worked over forty (40) hours each week, they never received overtime compensation.

150. Plaintiffs' and other Specialists' bonuses should have been added to their piece rate compensation in order to calculate their regular hourly rates. Plaintiffs and other Specialists were entitled to overtime compensation based on those rates.

151. Consequently, Plaintiffs and other Specialists were not compensated at a rate of "time and a half" their regular rates of pay. This occurred for the duration of their employment.

(*Id.* ¶¶ 130-151 (*sic*).)

Thus, Plaintiffs allege that not only were they not compensated for working overtime but also the rate of pay at which they were compensated should have reflected the bonuses that were regularly paid as compensation.

## *IV. Analysis of the motion to dismiss*

Claiming the amended complaint fails to state a claim, Carchex attacks it on three bases: (1) Plaintiffs fail to allege a claim of unpaid overtime in specified work weeks; (2) Plaintiffs fail to allege the extent, scope, and/or timeframe of any individual's alleged off-the-clock work; and (3) Plaintiffs fail to allege a claim that Carchex, LLC, as a successor to NAI, is responsible for NAI's liabilities. (Carchex's Mot. Dismiss Supp. Mem. 3-7, ECF No. 89-1.) Carchex's arguments are without merit.

6

### A. *Unpaid overtime in specified work weeks*

Carchex correctly cites the case of *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 635 (2018), for the principle that Plaintiffs alleging their FLSA violation claim "must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay . . . [and, further, that they] must provide detail about the length and frequency of their unpaid work, to support a reasonable inference that they worked more than forty hours in a given week." *Id.* However, the sort of vague, conclusional allegations previously found by this Court to be insufficient under that standard are not what has been pled here. *See, e.g., Peterson v. M.J.J., Inc.*, Civ. No. JKB-16-3629, 2017 WL 4098755, 2017 U.S. Dist. LEXIS 148908 (D. Md. Sept. 13, 2017), *aff'd*, No. 17-2088, 720 F. App'x 702 (4th Cir. Apr. 26, 2018). Instead, Plaintiffs have provided specific detail as to how, *for every week they worked*, they easily surpassed forty hours of work. They have alleged facts as to length and duration of their Monday-through-Friday shifts, their required Saturday shifts, their rare use of a one-hour lunch break, their telecommuting work beyond their shifts, and Defendants' awareness that Plaintiffs would have to work much more than forty hours each week in order to meet their sales goals and thereby retain their employment. In short, Plaintiffs have met their burden of providing sufficient factual allegations to support a reasonable inference that every Plaintiff worked more than forty hours in at least one workweek and that Defendants failed to pay the requisite overtime premium for those overtime hours. *See Hall*, 846 F.3d at 777.

### B. *Extent, scope, and/or timeframe of any individual's alleged off-the-clock work*

Carchex next faults the amended complaint because it does not provide, for example, Plaintiff Chado's typical workweek or any other individual's typical workweek. This argument is specious. According to the plausible allegations in the amended complaint, *every* Plaintiff was

treated the same: they were all subject to the same demand for completion of enough sales that could not be realistically met by merely working forty hours a week, and they all were subject to the same sort of shift scheduling that necessitated a significant number of hours above forty *every* week. Plaintiffs' allegations are sufficient for putting Defendants on notice of the claims against them.

### C. *Carchex's position as successor to NAI*

Carchex's last argument is that it did not come into being until March 2018, and all of Plaintiffs' allegations refer to a time period prior to that; consequently, it cannot be held liable for NAI's conduct. This argument is not properly made on a motion to dismiss. Carchex is not challenging the sufficiency of the allegations, which plausibly allege Carchex's liability as Plaintiffs' employer, but is advancing a claim that the allegations are not supported by the evidence. Carchex has even supplied an exhibit in the form of a declaration made by the chief financial officer of Carchex to support its argument. However, the Court will not consider such evidence at this stage of the proceedings. After appropriate factual discovery, Carchex may renew its argument in the form of a motion for summary judgment.

## V. *Motion to vacate or sever*

Carchex appears to claim that the original order of reference, entered at a time after all parties then in the case consented to a magistrate judge's jurisdiction for all proceedings, is somehow invalid because Carchex was added later to the case and does not so consent. Thus, Carchex asks that the order of reference be vacated. Carchex has not cited binding authority for the notion that a prior, valid order of reference becomes invalid in these circumstances, and the Court sees no judicial economy in vacating the order of reference, which would have the effect of nullifying all subsequent orders entered by the magistrate judge. Inasmuch as the motion

8

seeks vacating the order of reference and cancellation of prior orders, the motion will be denied. Further, the portion of Carchex's motion that seeks to sever it from the case before the magistrate judge is moot now that the case has been returned to the undersigned district judge. Giving Carchex the benefit of the doubt as to proceedings going forward, the Court will permit Carchex to file a motion for reconsideration of the orders entered prior to Carchex's entry into the case that may not be referred to a magistrate judge under 28 U.S.C. § 636(b)(1)(A) without the consent of all parties, *i.e.*, those granting conditional certification of a collective class (ECF No. 25) and the order of July 13, 2018, to the extent it granted Plaintiffs' motion for class certification (ECF No. 78).[1]

## *VI. Conclusion*

None of Carchex's contentions in support of its motion to dismiss has merit. The amended complaint reasonably and plausibly states a claim for relief. Additionally, the motion to vacate is without merit and the alternative motion to sever is moot. Accordingly, it is hereby ORDERED:

1. The motion to dismiss (ECF No. 89) is DENIED.
2. Carchex SHALL ANSWER the amended complaint in the time afforded by Federal Rule of Civil Procedure 12(a)(4)(A).
3. The motion to vacate or, alternatively, to sever (ECF No. 91) is DENIED.
4. Carchex has THIRTY DAYS after the date of this order within which to file a motion for reconsideration of prior orders entered by the magistrate judge, as stated above.

---

[1] The order of July 12, 2018, also granted Plaintiffs' motion to amend their complaint, but such a motion is not one that may only be considered by a magistrate judge if the parties consent, pursuant to § 636(b)(1)(A). Thus, that portion of the order will not be disturbed.

DATED this 28 day of November, 2018.

BY THE COURT:

/s/ James K. Bredar
James K. Bredar
Chief Judge