IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IAN CHADO *et al.*,           *

    **Plaintiffs**           *

v.                            *

                                                             **CIVIL NO. JKB-17-2945**

NAT'L AUTO INSPECTIONS, LLC,  *
*trading as* Carchex, *et al.*,
    **Defendants**           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM**

*I. Background*

This case was filed pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* It claims a failure to pay overtime wages to Plaintiffs during their employment as Vehicle Protection Specialists ("Specialists") working out of a call center in Hunt Valley, Maryland. The case was brought against National Auto Inspections, LLC, *t/a* Carchex ("NAI"), by Ian Chado, Nancy Nguyen, and William Rush individually and on behalf of all similarly situated employees. (Compl., ECF No. 1.)

After NAI filed an answer (ECF No. 7), the Court held a scheduling conference with Plaintiffs' and NAI's counsel, who informed the undersigned that the parties consented to a magistrate judge's conduct of all further proceedings. The same day, the parties filed their consent forms (ECF Nos. 16, 17), and the case was duly reassigned to Magistrate Judge David Copperthite (ECF No. 18). Already pending at the time of reassignment was Plaintiffs' motion for conditional certification of the case as a collective action under the FLSA and to facilitate identification and

notice to similarly situated individuals. (ECF No. 15.) In its response to this motion, NAI, while denying the allegations in the complaint, recognized "that the Plaintiffs need only satisfy the low threshold of conditional certification at this stage by setting forth 'relatively modest evidence that they are similarly situated,'" and it did not dispute that the employees at issue were similarly situated. (NAI's Resp. 2-3, ECF No. 23.) Shortly thereafter, Judge Copperthite granted Plaintiffs' motion (ECF No. 25) and approved a notice of collective action to be sent to similarly situated individuals (ECF No. 29).

More than thirty people filed "opt-in" notices and were thereby added to the case as Plaintiffs. (ECF No. 30 *et seq.*) Plaintiffs filed a motion to amend the complaint (ECF No. 64), which was granted (ECF No. 78). The amended complaint (ECF No. 79) included not only the three putative class representatives but also all of the FLSA opt-in Plaintiffs as named plaintiffs for a total number of thirty-eight Plaintiffs listed in the amended complaint. In addition, the amended complaint added Carchex, LLC ("Carchex"), and Jason Goldsmith as Defendants.[1]

In the same order granting the amended complaint, Judge Copperthite also granted another motion by Plaintiffs (ECF No. 72) to certify the case as a class action for the MWHL and MWPCL claims under state law. (ECF Nos. 77, 78.) He defined the certified class as the following:

> All persons that work or worked for Defendant as a Vehicle Protection Specialist between October 5, 2014 and the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek.

---

[1] Prior to Carchex, LLC's entry into the case, NAI referred to itself in its court papers as "Carchex." (*See, e.g.*, ECF No. 23.)

(Order, July 13, 2018, ECF No. 78.) He also appointed all thirty-eight Plaintiffs named in the amended complaint plus one of the additional opt-in Plaintiffs, Robert Woods, as class representatives. (*Id.* 2.)[2]

After the amended complaint was docketed, NAI filed its answer (ECF No. 80), Goldsmith filed his answer (ECF No. 97), and Carchex filed a motion to dismiss for failure to state a claim (ECF No. 89) and a motion to vacate all of Judge Copperthite's orders, based on Carchex's lack of consent to a magistrate judge conducting all proceedings in the case (ECF No. 91).[3] After Carchex's motions became ripe, the case was reassigned to Chief Judge Bredar, who denied both motions, but allowed Carchex to file a motion for reconsideration of Judge Copperthite's orders granting conditional certification of a collective action (ECF No. 25) and granting class certification on the state law claims (ECF No. 78). (Mem. Nov. 28, 2018, ECF No. 104; Order, Nov. 28, 2018, ECF No. 105.) The Court subsequently granted limited discovery on the question of class certification. (ECF No. 112.) Following the limited discovery, Carchex, Goldsmith, and NAI filed motions for reconsideration of the two certification orders. (ECF Nos. 120, 121.) The motions have been briefed (ECF Nos. 122, 123, 124) and are ripe for decision. No hearing is necessary. Local Rule 105.6 (D. Md. 2018). The motions will be granted in part and denied in part.

---

[2] Six other Plaintiffs filed their consent forms to be included in the case, and the Clerk has followed the Court's standard practice and added them and Robert Woods to the docket as parties, regardless of whether they are named in the complaint, consistent with the party consent provision in 29 U.S.C. § 216 ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[3] Newly added Defendant Goldsmith also did not consent to a magistrate judge serving as the case's presiding judge.

## II. Conditional Certification of a Collective Action under the FLSA

### A. Standard

In Title 29, United States Code, Section 216(b), it is stated, "An action to recover the liability prescribed in the preceding sentences [as to unpaid minimum wages or unpaid overtime wages] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Further, other employees who are similarly situated may "opt in" to the suit by filing their statements of consent with the court. *Id.* However, it is not necessary for a suit to be certified as a collective action before employees may "opt in" to it. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010), *cited in Blake v. Broadway Servs., Inc.*, Civ. No. CCB-18-086, 2018 WL 4374915, at *2 (D. Md. Sept. 13, 2018). Certification of a collective action under the FLSA "is merely the trial court's exercise of discretionary power to notify potential class members." *Blake*, 2018 WL 4374915, at *2 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

"When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). This case was at the first stage when Judge Copperthite granted conditional certification. For conditional certification, it is only necessary for the Court to make a "threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to the putative class members would be appropriate." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (internal quotation marks omitted). The statute does not define "similarly situated." But this Court has opined that "a group of potential FLSA plaintiffs is 'similarly situated' if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law." *Butler*, 876 F. Supp.

4

2d at 566. "To satisfy their burden at this stage, the plaintiffs must make 'a relatively modest factual showing' that such a common policy, scheme, or plan exists." *Blake*, 2018 WL 4374915, at *3 (quoting *Randolph v. PowerComm Const., Inc.*, 7 F. Supp. 3d 561, 575 (D. Md. 2014)). "'Plaintiffs may rely on affidavits or other means, such as declarations or deposition testimony,' to satisfy this legal standard." *Veney v. John W. Clarke, Inc.*, Civ. No. JKB-13-2410, 2014 WL 4388541, at *1 (D. Md. Sept. 3, 2014) (quoting *Parker v. StoneMor GP, LLC*, Civ. No. CCB–12–223, 2013 WL 3804842, at *1 (D. Md. July 19, 2013)). The case's merits are not considered when a court rules upon conditional certification of an FLSA collective action. *Blake*, 2018 WL 4374915, at *3. Moreover, whether certification of such a suit should be made regarding FLSA claims is wholly independent of any determination as to whether the case should be certified under Federal Rule of Civil Procedure 23 for other claims in the case, and Rule 23 considerations are not relevant to collective action certification. *Emkey v. W.S.C., Inc.*, Civ. No. RDB-18-1304, 2019 WL 1298478, at *2 (D. Md. Mar. 21, 2019).

***B. Analysis***

Carchex (and Goldsmith and NAI, by adoption of Carchex's motion) indicates it is asking this Court's reconsideration of the conditional certification order "[f]or substantively the same reasons" as Carchex is asking for reconsideration of the class certification order. (Carchex's Mot. Reconsideration 1, ECF No. 120.) Thus, Carchex provides no separate argument on whether Judge Copperthite correctly granted Plaintiffs' motion for conditional certification of the case as a collective action under the FLSA. Despite Defendants' failure to articulate a focused argument on the point, the Court has nonetheless reconsidered the question of conditional certification and has concluded the ruling is correct. As previously noted, whether the two rulings as to conditional

5

certification of an FLSA collective action and as to class certification on the state law claims are correct is determined under different standards.

The potential plaintiffs in this case all worked in the same position out of the same location. The depositions of eight Plaintiffs, excerpts of which were provided to the Court as exhibits, are consistent in establishing that all potential plaintiffs were subject to the same complex piece-rate compensation policy. The policy, submitted to the Court in the form of attachments to depositions, was silent as to overtime. The deposed Plaintiffs uniformly testified they worked well beyond forty hours per week in every week of their employment. Critically, a member of NAI's management testified that overtime was based upon *scheduled* hours, but scheduled hours were generally restricted to a forty-five-hour work week, with one hour each day for lunch. Thus, according to the evidence before the Court, every potential plaintiff was subject to an unwritten policy under which overtime was calculated using scheduled hours, not actual hours. Further, Plaintiffs' testimony indicated that NAI did not have a system for reliably capturing all hours worked for the purpose of determining overtime; the call records relied upon by Defendants only established when Plaintiffs were logged into the Carchex computer system and were on the telephone with prospective customers. Plaintiffs' testimony provided evidence that they were working at times other than when they were on the telephone. They also provided evidence that Carchex, in fact, has a system that tracks all of Plaintiffs' work time, but that system is not used for computing overtime.

Thus, Plaintiffs established that they and all potential plaintiffs "were victims of a common policy, scheme, or plan that violated the law." *See Butler*, 876 F. Supp. 2d at 566. Accordingly, they are appropriately regarded as "similarly situated" and this case is properly granted conditional certification as a collective action under the FLSA. Having considered the matter anew, the

undersigned adopts Judge Copperthite's ruling (ECF No. 25) as the ruling of the Court. The parties shall advise the Court if they object to having a new "opt-in" period and, if so, the basis for any objection.

## III. Class Certification

The true focus of Defendants' motion for reconsideration is the ruling in which the case was certified as a class action in reference to the state law claims.

### A. Standard

Rule 23, Federal Rules of Civil Procedure, provides the framework for the Court's analysis on the question of class certification. It sets forth four prerequisites in Rule 23(a):

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

The requirements of Rule 23(a) are usually referred to as numerosity, commonality, typicality, and adequacy of representation. *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318, 330 (1980). If the prerequisites of Rule 23(a) are met, then a class action may be certified if it meets one of the subparagraphs of Rule 23(b). Plaintiffs have chosen to proceed under Rule 23(b)(3), which allows certification if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

A class certified under Rule 23(b)(3) "must satisfy all of Rule 23(a)'s prerequisites and two additional requirements: predominance and superiority." *EQT Production Co. v. Adair*, 764 F.3d 347, 365 (4th Cir. 2014). The Fourth Circuit has also "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" a requirement that is characterized in other circuits as an "ascertainability" requirement. *Id.* at 358.

### B. Analysis

In challenging the propriety of class certification, Defendants take issue with ascertainability, commonality, and typicality, as well as with whether certain class representatives can adequately represent the class members. They also contend that common questions of law or fact do not predominate over questions pertaining only to individual members of the class. Because ascertainability is considered a threshold issue, the Court will address it first.

#### 1. Ascertainability

Defendants have challenged the class definition as a "fail-safe" class, that is, one that requires a finding of liability before ascertaining whether an individual is a class member. This contention has merit. "[A] fail-safe class 'is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *EQT Production*, 764 F.3d at 360 n.9 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)). "If class members are impossible to identify without extensive and individualized fact-finding, or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012), *quoted in EQT Production*, 764 F.3d at 358.

In this case, the class is defined to include

8

> All persons that work or worked for Defendant as a Vehicle Protection Specialist between October 5, 2014 and the present and who were not paid an overtime rate of "time and a half" their regular rate for all hours worked over forty (40) in a workweek.

This definition requires determination of whether a class member was *not* paid an overtime rate for all hours in excess of forty before it can be said that such an individual is a member of the class. To make that determination, it would be necessary to engage in individual fact-finding to identify the members of the class. Thus, the current class definition is inappropriate to readily identify class members. However, the remedy to that problem is not, as Defendants suggest, decertification of the class and dismissal of the case without prejudice for Specialists to file individual claims (*see* Carchex's Mot. Reconsideration Mem. Supp. 26, 33) but instead to accept Plaintiffs' suggestion to redefine the class.

Accordingly, the class definition going forward shall be the following:

> All persons who worked for Defendants as Vehicle Protection Specialists between October 5, 2014, and the present and who were compensated pursuant to NAI's uniform compensation plan.

This revised definition allows members of the class to be readily identified, satisfying the threshold requirement of ascertainability in Rule 23.

### 2. *Numerosity*

Defendants have not challenged numerosity, and, based on undisputed information that the total number of affected Specialists is 238 (Pls.' Mot. Class Certif. Mem. Supp. 12, ECF No. 72-1), the Court finds the members of the class are sufficiently numerous to satisfy Rule 23(a)(1).

### 3. *Commonality*

The Supreme Court has provided guidance on the commonality inquiry:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." . . . [The class members'] claims must depend upon a common contention . . . [and t]hat common contention, moreover, must be of such

9

a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation omitted).

The common contention of the class members in the instant case is that they were not properly compensated for overtime hours because Defendants computed overtime according to scheduled hours rather than actual hours. If that is true, then every member of the class is entitled to a recomputation of compensation based upon actual hours worked. Defendants argue that every Specialist's hours will differ, thereby making a class action unsuitable. But Defendants' argument falls short. It fails to recognize that the policy of compensation was applied across the board to all Specialists, thereby allegedly shortchanging all of them. *See Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013) (unpublished) (quoting *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 910 (7th Cir. 2012), for observation that "the glue holding together the Hourly and ABM classes is based on *the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation*" (emphasis added), *cert. granted, judgment vacated*, 569 U.S. 901 (2013)). Computation of each Specialist's proper compensation becomes ministerial once the decision is made to account for all hours actually worked. Consequently, Plaintiffs have demonstrated that Rule 23(a)(2)'s commonality requirement is satisfied.[4]

### 4. Typicality

Assuming for the moment that all thirty-nine Plaintiffs should have been appointed as class representatives, the Court finds that each of the appointees' claims is typical of the class members'

---

[4] Apparently, Judge Copperthite erroneously cited a question of exemption from the FLSA's overtime requirements as a common issue. The parties have never disputed that the Specialists were nonexempt employees. The undersigned does not rely upon exemption as a basis for certification.

10

claims. The Court so finds after comparing the elements of each appointee's *prima facie* case, the facts upon which each appointee would necessarily rely to prove the requisite elements, and consideration of whether and to what extent those facts would also prove the absent class members' claims. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 467 (4th Cir. 2006) (setting forth steps of typicality analysis). Here, each Specialist must show that he or she worked overtime hours that were not compensated by providing evidence of the hours worked in relation to the compensation received. Additionally, the claimed reason each Specialist suffered nonpayment of overtime is uniform application of a compensation policy that relied upon scheduled hours rather than actual hours worked. One Specialist's proof of the consistent application of that policy would also prove the reason all other Specialists were not compensated for overtime. Thus, each Plaintiff's "pursuit of his own interests ... 'simultaneously tends to advance the interest of the absent class members.'" *Ealy*, 514 F. App'x at 305 (quoting *Deiter*, 436 F.3d at 466). The Court concludes, therefore, that the representatives' claims are typical of the absent class members' claims, which satisfies Rule 23(a)(3).

### 5. *Adequacy of Representation*

Whether each representative will "fairly and adequately protect the interest of the class," Rule 23(a)(4), requires the Court to determine whether a representative "'possess[es] the same interest and suffer[s] the same injury' as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019). In addition, the Court must inquire as to any "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), *quoted in Sharp Farms*, 917 F.3d at 295. "For a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'" *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d

11

164, 180 (4th Cir. 2010). "A conflict is not fundamental when . . . all class members 'share common objectives and the same factual and legal positions [and] have the same interest in establishing the liability of [defendants].'" *Id.* (alterations in original).

Here, each Plaintiff suffered the same injury—nonpayment of overtime—as every member of the class, and each Plaintiff possesses the same interest in having that injury rectified by requiring Defendants to compensate Plaintiffs for the unpaid overtime. The Court can find no conflicts of interest among class members. It, therefore, follows, that the representatives do not possess conflicts of interest with those whom they seek to represent, and, consequently, the representatives can adequately represent the class members.

Defendants argue, however, that the named Plaintiffs are inadequate class representatives. (Carchex's Mot. Reconsideration Mem. Supp. 18-24.) The Court has considered that argument but finds it unpersuasive. Defendants point to supposed inconsistencies between twenty-five declarations made by the named Plaintiffs and the deposition testimony of eight named Plaintiffs. The declarations at issue indicate the signees consistently worked more than forty hours per week and other Specialists did the same. Defendants contend, based upon Plaintiffs' deposition testimony, that Plaintiffs cannot say what hours they actually worked and cannot say what hours any other Specialist worked. This contention, wrongly, ascribes the burden of keeping track of hours worked to the class members. The FLSA requires employers to keep track of hours worked. 29 U.S.C. § 211(c). The deposed Plaintiffs testified to their working overtime and how they were aware of those around them who worked during similar times because they saw them there, because they exchanged email and text messages about it, and because they had hallway conversations about it.

Defendants further note they noticed depositions for twelve Plaintiffs during the certification discovery period, but that two Plaintiffs withdrew from the case after receiving the notice, two more failed to appear for their depositions, and three others "testified that they were not seeking to represent anyone but themselves." (Carchex's Mot. Reconsideration Mem. Supp. 19.) The two withdrawn Plaintiffs obviously will not be included in the class representatives because they are no longer in the case. Regardless, Defendants cite no authority for their implicit proposition that named plaintiffs who withdraw from a case are then somehow rendered ineligible to be class *members*, as opposed to *representatives*, and the Court finds that assertion to be without merit. (*See id.* 22.) As for the two Plaintiffs who failed to appear for their depositions, they will likewise be excluded from serving as class representatives. As for the three Plaintiffs whose testimony, Defendants assert, casts doubt on their ability and willingness to serve as class representatives, the Court has examined the testimony at issue and finds defense counsel's questioning ambiguous, especially when considering that the Plaintiffs are laypersons and counsel did not explain what he meant when asking the three—Teresa Jenkins, Christina Lambros, and Stockton Worden—about representing the claims of other people. (*Id.*, Ex. 6, Jenkins Dep. 50:10; Ex. 4, Lambros Dep. 101:17-19, 102:1-2, *but see* Pls.' Opp'n, Ex. 4, Lambros Dep. 102:19—103:1-2 (Lambros's testimony regarding her hours, employment, and schedule is representative of the class); Carchex's Mot. Reconsideration Ex. 8, Worden Dep. 47:19-20, *but see* Pls.' Opp'n, Ex. 7, Worden Dep. 54:20-23 (Worden's testimony representative of class because members were not paid overtime).) After reviewing the testimony of Jenkins, Lambros, and Worden, the Court finds they can serve adequately as class representatives.

Defendants, however, argue that the declarations relied upon by Judge Copperthite were full of falsity and overstatements and cannot be relied upon in determining whether to allow an

13

individual to represent the class. (Carchex's Mot. Reconsideration Mem. Supp. 21.) The undersigned has not relied upon the declarations but instead has relied upon the deposition testimony and has found therein ample foundation for class representatives to function in that capacity.

Finally, Defendants take issue with Ian Chado and Andrew Sterne serving as class representatives because they testified they used their cell phones and/or landline telephones to make sales calls when other Plaintiffs testified they did not or were not able to do so. (*Id.* 22-23.) Whether various class members used means to contact customers other than through their computers is not critical to determination of the common contention, *i.e.*, whether Defendants failed to pay overtime compensation because compensation was based upon scheduled hours rather than actual hours. The Court finds no merit in this argument.

### *6. Predominance*

"Under Rule 23(b)(3), whether common questions predominate over individual questions is a separate inquiry, distinct from the requirements found in Rule 23(a)[, and t]his balancing test of common and individual issues is qualitative, not quantitative." *Ealy*, 514 F. App'x at 305 (citation omitted). Thus, "common issues of liability may still predominate even when some individualized inquiry is required." *Id.* The *Ealy* opinion referred to a case in which common issues of liability were found to predominate over individual questions. Turning to that case, *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267 (4th Cir. 2010) (unpublished), one finds a ready analogy to the instant case. In *Stillmock*, the Court considered whether individual damage claims pursuant to the Fair and Accurate Credit Transaction Act qualitatively predominated over the common contention of the defendant's willfulness in violating the Act and opined that where, "the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the

purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3)." 385 F. App'x. at 273. Here, every time Defendants calculated the Specialists' compensation pursuant to its uniform policy, which did not provide for overtime, the class members were exposed to the same risk of harm because compensation was based upon scheduled hours rather than actual hours. Thus, the common contention of unlawful application of the compensation policy under the MWHL and the MWPCL predominates over individualized inquiries into how much any particular Specialist is owed.

### 7. *Superiority*

Finally, the Court finds no alternative mechanism exists for resolving the class members' MWHL and MWPCL claims. *Ealy*, 514 F. App'x at 308. A class action is superior for resolving the common question posed by the class members, and no advantage can be found in requiring each class member to proceed separately. Defendants have not argued to the contrary.

### *C. Appointment of Class Representatives*

The Court can find no reasonable basis for every named Plaintiff and/or every opt-in Plaintiff to be appointed to represent the class. The original three named Plaintiffs provide ample representation for the absent class members. *Accord Carrabba v. Randalls Food Markets, Inc.*, 191 F. Supp. 2d 815, 827-28 (N.D. Tex. 2002).

## *IV. Conclusion*

The Court concludes this case is properly granted conditional certification as a collective action under the FLSA. It also concludes the case is appropriately certified as a class action pursuant to Rule 23(b)(3), but the class definition is revised and only three class representatives are appointed. A separate order will issue.

DATED this __2__ day of May, 2019.

BY THE COURT:

*James K. Bredar*
James K. Bredar
Chief Judge