IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IAN CHADO *et al.*,                                    *

    Plaintiffs,                                    *

    v.                                    *

                                             **CIVIL NO. JKB-17-2945**

NAT'L AUTO INSPECTIONS, LLC,                *
T/A CARCHEX *et al.*,
    Defendants.                                    *

    *      *      *      *      *      *      *      *      *      *      *      *

## MEMORANDUM

Now pending before the court is Plaintiffs' Joint Motion for Final Approval of the Settlement.[1] (Mot. Approval, ECF No. 156.) For the reasons set forth below, the Court will grant the motion.

## I.    *Background*

This case was filed pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* It claims a failure to pay overtime wages to Plaintiffs during their employment as Vehicle Protection Specialists working out of a call center in Hunt Valley, Maryland. (Am. Compl., ECF No. 79.) On May 18, 2019, this Court certified the class for the state law claims and conditionally certified the case as a collective action for the FLSA claims.[2] (ECF Nos. 131, 132.)

---

[1]    Plaintiffs filed this as a "notice" on the docket, but the Court will construe it as a motion.
[2]    A more detailed review of the lengthy procedural history of this case is laid out in the Court's prior memorandum. (*See* ECF No. 131).

In August 2019, the parties participated in a settlement mediation with the Honorable William Connelly (Ret.). (Mot. Approval Mem. at 3, ECF No. 154-1.) The parties participated in an in-person session on August 6, 2019 as well as a follow-up conference call the next day. (*Id.*) The negotiations were productive, and the parties reached a settlement agreement on August 7, 2019. (*Id.*)

The settlement agreement provides a gross settlement fund of five hundred seventy-five thousand dollars ($575,000.00). (Revised Settlement Agreement at 3, Supplemental Mem. Ex. A, ECF No. 169-1.) Of that amount, three hundred fifteen thousand dollars ($315,000.00) will be allocated toward payments to the class. (*Id.* at 6.) This sum includes proposed service awards of fifteen hundred dollars ($1,500.00) for eleven Plaintiffs who played significant roles in the ultimate resolution in this case. (*Id.* at 7.) The remaining two-hundred and sixty thousand dollars ($260,000.00) will be allocated for class counsel's attorneys' fees and costs. (*Id.* at 6.)

The Court preliminarily approved the settlement on September 26, 2019. (ECF No. 155.) In the same order, the Court appointed RG/2 Claims Administration LLC as the Settlement Administrator and approved the parties' proposed plan for notice to the settlement class members. (*Id.*) A final fairness hearing was set in for December 4, 2019, but the hearing was postponed upon a joint request by the parties after they discovered several days before the hearing that notice had not been timely sent to the class. (ECF No. 158.) The hearing was rescheduled for April 6, 2020, but the hearing was postponed again, this time because of the COVID-19 pandemic. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-05 (D. Md. Mar. 20, 2020).

The hearing was then rescheduled for July 10, 2020, and the hearing occurred on that date as scheduled. (ECF No. 167.) Because of the ongoing COVID-19 pandemic and the health risks

2

associated with it, the Court granted counsel's request to participate in the hearing telephonically. (ECF Nos. 165, 166.) To ensure class members had a full opportunity to be heard at the hearing despite the ongoing pandemic, the Court provided class members the opportunity to attend the hearing in person or by telephone. (ECF No. 163.) The Court docketed instructions for how to participate telephonically and instructed Plaintiffs' counsel to distribute the instructions to class members. (*Id.*) The dial-in number for the telephone line was also posted on the court's public calendar. On the day of the hearing, no class members attended the hearing in person and no class members spoke over the telephone after being given several opportunities to do so by the Court.

After the hearing, the Court entered an order requiring the parties to submit additional information on two topics: service awards and attorneys' fees. (Order for Supplemental Information, ECF No. 168.) With respect to service awards, the Court noted that the motion for final approval stated that there were eleven plaintiffs entitled to a service award, but the settlement agreement itself provided only ten names. (*Id.* at 1.) The Court directed the parties to clarify this discrepancy and advise the Court as to how the matter should be addressed in the Court's final order, should the Court approve the settlement. (*Id.*) The Court also noted that the time records Plaintiffs' counsel provided in support of its request for attorneys' fees did not contain the level of detail required by the Local Rules or the relevant case law. (*Id.* at 1–2.) Accordingly, the Court directed Plaintiffs' counsel to supplement its motion for final approval with time records consistent with the parameters described in Appendix B of the Local Rules. (*Id.* at 3.)

On July 24, 2020, Plaintiffs' counsel submitted the additional information requested by the Court. (Supplemental Mem., ECF No. 169.) With respect to the service awards, Plaintiffs' counsel clarified that eleven plaintiffs are entitled to a service award and the omission of one of the plaintiff's names from the settlement agreement was a clerical error. (*Id.* at 1.) The parties

3

executed a revised settlement agreement to reflect this change, which Plaintiffs submitted as an attachment to their supplemental memorandum. (*See* Revised Settlement Agreement.) With respect to attorneys' fees, Plaintiffs' counsel submitted a more detailed fee breakdown that contained the information requested by the Court. (Time Records, Supplemental Mem. Ex. B, ECF No. 169-2.)

Having preliminarily approved the settlement, held a final fairness hearing, and obtained the supplemental information needed from the parties, the only remaining question before the Court is whether to grant final approval for the settlement.[3] Because Plaintiffs brought suit under the FLSA and Maryland state law, the Court will consider whether the settlement should be approved under the relevant standards set forth by the FLSA and Federal Rule of Civil Procedure 23.

## II.    *The Collective Action Under The FLSA*

Although the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407–08 (D. Md. 2014) (citing *Saman v. LBDP, Inc.*, Civ. No. DKC-12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013)). Pursuant to *Lynn's Food Stores*, courts typically employ a two-step process, in which they first examine whether there is a "*bona fide* dispute" presented under the FLSA, and second, whether the settlement agreement is fair and reasonable. *Saman*, 2013 WL 2949047, at *3. Assessing fairness and reasonableness requires "weighing a number of factors, including '(1) the extent of discovery that has taken place; (2) the stage of the proceedings,

---

[3]    The Court also notes that during the final fairness hearing, the parties represented that the notice procedures described in the motion for preliminary approval were followed, and the Court accordingly found that the notice procedures complied with the requirements of due process and Federal Rule of Civil Procedure 23.

including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.'" *Id.* (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, Civ. No. AJT-08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).

Here, the Court is satisfied that there is a *bona fide* dispute under the FLSA. This suit centers on how to calculate the number of hours employees worked: Plaintiffs contend a "first call, last call" system is the most accurate way to measure hours worked while Defendants contend a "call duration" system is more accurate. (Mot. Approval Mem. at 8–10.) The parties have advanced legitimate arguments as to the merits and shortcomings of both systems, and they have calculated the overtime implications of their respective positions, with Plaintiffs contending they are owed $690,695.59 in overtime wages and liquidated damages, and Defendants contending Plaintiffs are owed nothing. (*Id.*) Accordingly, the Court is satisfied that a *bona fide* dispute exists under the FLSA. *See, e.g.*, *Butler v. DirectSAT USA, LLC*, Civ. No. DKC-10-2747F, 2015 WL 5177757, at *3 (D. Md. Sept. 3, 2015) (finding that a *bona fide* dispute exists where the plaintiffs asserted they were entitled to overtime wages under the FLSA and the defendants asserted the plaintiffs were not).

The Court is also satisfied that the terms of the settlement are fair and reasonable. With respect to the first and second factors, a significant amount of discovery has taken place—a total of ten depositions have been taken and a considerable amount of formal and informal written discovery was exchanged prior to settlement negotiations. (Mot. Approval Mem. at 11.) Such discovery allowed the Plaintiffs to evaluate the strengths and weaknesses of their claims and to understand the strained financial circumstances of Defendants. A significant amount of discovery

5

still remains, however, as well as dispositive motions, and trial, all of which would be costly and would protract this litigation, which has been pending for almost three years.

With respect to the third, fourth, and fifth factors, Plaintiffs' counsel has significant experience litigating wage and hour cases (*see* Attorneys' Fees Mem., Mot. Approval Ex. G at 3–4, ECF No. 154-9) and has expressed their view that the settlement is in their clients' best interests. There is also no indication that fraud or collusion played a role in the settlement. Judge Connelly submitted a certification describing the robust negotiations that took place and stating his opinion that the settlement was the result of arms-length negotiations. (Connelly Certification, Mot. Approval Ex. F, ECF No. 154-8.)

With respect to the final factor, the settlement amount is fair and reasonable in relation to the potential recovery by Plaintiffs in this case. As referenced above, both parties' theories for calculating the number of hours worked are flawed, with Plaintiffs' theory arguably overcounting the number of hours and Defendants' theory arguably undercounting them. (*See* Mot. Approval Mem. at 9–10.) The fact that the parties have settled for an amount that is approximately halfway between their respective positions indicates the parties have reached a reasonable compromise. Additional—but unnecessary—evidence that the settlement amount is reasonable is the fact that, as Judge Connelly notes, there is a "high probability that continued litigation would result in bankruptcy by the Defendants" and that in such a scenario, there is a "high likelihood of no recovery on the part of the Plaintiffs." (Connelly Certification at 3–4.) This very real possibility of no recovery further supports the notion that an award of $315,000 is reasonable.

For all of these reasons, the Court agrees with Judge Connelly that this settlement is "a good result for all parties" (*id.* at 4), and the Court concludes the standard for approval under the FLSA is satisfied.

6

### III.    *The Class Action Under Rule 23*

Pursuant to Rule 23, a settlement agreement that binds members of a class action can only be approved upon a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The 'fairness' prong is concerned with the procedural propriety of the proposed settlement agreement, while the 'adequacy' prong focuses on the agreement's substantive propriety." *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 460 (D. Md. 2014) (citations omitted).

### A. *Fairness*

In evaluating the fairness of a proposed settlement, the following factors must be considered: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). The fairness inquiry serves to protect against the danger that counsel might "compromise[e] a suit for an inadequate amount for the sake of insuring a fee." *In re Mid–Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983) (citing *In re Montgomery Cty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315 (D. Md. 1979)).

For many of the reasons discussed in Part II, each of these factors is satisfied. First, although dispositive motions have not yet been filed, this case has been pending for almost three years and it has proceeded past the certification stage and is well into discovery. Second, a significant amount of formal and informal discovery has already occurred, which has allowed the parties to examine the strengths and weakness of their positions. Third, there is an absence of any evidence of collusion among the parties and the record suggests robust arms-length negotiations have taken place. Fourth, counsel in this matter have extensive experience litigating wage and

hour disputes. For all these reasons, the Court is satisfied that the settlement agreement satisfies Rule 23's fairness requirement.

### B. Adequacy

The adequacy analysis requires courts to consider: "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. The purpose of the adequacy analysis is to "weigh the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid–Atl. Toyota*, 564 F. Supp. at 1384 (citing *In re Montgomery Cty.*, 83 F.R.D. at 315–16)).

Here, these factors weigh in favor of approving the settlement for many of the reasons described in Part II. With respect to the first and second factors, Plaintiff's "first call, last call" system has flaws, and it is far from clear that Plaintiffs would have been able to recover the full amount they were seeking at trial. With respect to the third factor, this case has been pending for almost three years and yet a significant amount of litigation remains, including additional discovery, dispositive motions, and trial. This additional litigation would be time consuming and costly. With respect to the fourth factor, there is a "high probability that continued litigation would result in bankruptcy by the Defendants" and that in such a scenario, there is a "high likelihood of no recovery on the part of the Plaintiffs." (Connelly Certification at 3–4; *see also* Mot. Approval Mem. at 13.) Finally, with respect to the fifth factor, four class members have requested to be excluded (ECF No. 150), and no class members objected to the settlement in advance of or during

the fairness hearing (ECF No. 164). The lack of any objections from a class of 243 plaintiffs supports the notion that the settlement is adequate.

Collectively, these circumstances convince the Court that the settlement is "fair, reasonable, and adequate" under Rule 23.

### C. Plan for Allocation

The plan for allocation must also meet the standards of "fairness, reasonableness, and adequacy." *Boyd*, 299 F.R.D. at 461. "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Id.*

The settlement agreement provides that each class member's settlement award will be calculated based on the number of weeks that he or she worked for Defendants during the applicable statutory period. (Mot. Approval Mem. at 4–5; Revised Settlement Agreement at 7.) Specifically, each class member will be assigned a percentage of the settlement based on the number of weeks worked and will receive compensation according to that percentage. (*See* Proposed Allocation, Mot. Approval Ex. B, ECF No. 154-4.) Qualified counsel here have endorsed this approach and the approach appears to have a "reasonable and rational basis." *See Boyd*, 299 F.R.D. at 461. Accordingly, the Court will approve it.

### IV. Awards to Class Representatives

"To determine whether an incentive payment is warranted, a court should consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Boyd*, 299 F.R.D. at 469 (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).

9

Here, Plaintiffs propose a $1,500 award for eleven class members who they contend were "integral" to the case.[4] (Mot. Approval Mem. at 5.) These plaintiffs provided the information that was needed to certify the class, they sat for depositions, and/or they attended the mediation session that led to the settlement agreement. (*Id.*) The Court finds a service award is warranted for these plaintiffs because the work they performed was "taken to protect the interests of the class" and "benefitted" other class members. *See Boyd*, 299 F.R.D. at 469. The proposed award of $1,500 is relatively modest and the Court will approve it.

## V.    *Attorneys' Fees and Costs*

"In approving either a Rule 23 settlement or a private settlement of FLSA claims, the reasonableness of any award of attorneys' fees must be assessed." *Edelen v. Am. Residential Servs., LLC*, Civ. No. DKC 11-2744, 2013 WL 3816986, at *11 (D. Md. July 22, 2013). The starting point for the analysis is to "first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In deciding what constitutes a "reasonable" rate and number of hours, courts are guided by the *Kimbrell's* factors, which include:

> "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."

---

[4]    These class members are Ian Chado, Nancy Nguyen, William Rush, Rodney Bonds, Nicholas Miller, Stockton Worden, Christina Lambros, Teresa Jenkins, Tammy Hall, Andrew Sterne and Kenisha Hill. (Revised Settlement Agreement at 7.)

*Id.* (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). The lodestar figure yielded by this approach reflects a "presumptively" reasonable fee. *Leigh v. Bottling Grp., LLC*, Civ. No. DKC-10-0218, 2012 WL 460468, at \*9 (D. Md. Feb. 10, 2012) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). A court can then enhance or reduce the fee if it believes a modification is warranted based on the specific circumstances of the case. *See id.* (citing cases).

Here, Plaintiffs' counsel contends the appropriate lodestar figure is $332,723.84. (Mot. Approval Mem. at 15.) Because Plaintiffs' counsel seeks fees that are less than the lodestar figure—specifically, Plaintiffs' counsel seeks $260,000 in fees, of which $16,890.09 are costs—Plaintiffs' counsel contends its fee proposal is reasonable under the lodestar approach. (*Id.*)

The Court has reviewed the lodestar calculation and concludes a lodestar of $332,723.84 is appropriate. With respect to hourly rates, the rates provided all fall within the guidelines laid out in Appendix B of the Local Rules—albeit, on the high end of the range. *See* Local Rules, App. B (2018)); (Attorneys' Fees Mem. at 3). The *Kimbrell's* factors suggest that a rate at the high end is warranted—specifically, Plaintiffs' counsel significant experience in the wage and hour area and Plaintiffs' counsel's success on most of the key motions during this litigation. *See Kimbrell's*, 577 F.2d at 226 n.28. The record also suggests the number of hours expended by Plaintiffs' counsel during this litigation was reasonable. After being prompted by the Court, Plaintiffs' counsel submitted detailed time records that identify the work performed by task, date, and hourly rate. (*See* Time Records.) The Court has reviewed these records and does not identify any "overly redundant, excessive, or unnecessary work."[5] *See Edelen*, 2013 WL 3816986, at \*14. Further, the complexity of this case, its lengthy and litigious history, the inherent risks associated

---

[5]      To the extent there are any redundancies or inefficiencies not apparent to the Court, they are likely offset by the fact that Plaintiffs' counsel is seeking fees that are less than the lodestar figure. In other words, because counsel is seeking less than the lodestar figure, there is some cushion if in fact the lodestar figure were somewhat inflated.

with taking on such a case, the challenges associated with litigating a case against defendants nearing bankruptcy, and the knowledge and labor required to achieve a class-wide settlement agreement of this nature and size all convince the Court that the proposed hourly rates and number of hours expended is reasonable. *See Kimbrell's*, 577 F.2d at 226 n.28.

Because the lodestar figure of $332,723.84 is reasonable, and because Plaintiffs' counsel is seeking $260,000 in fees and costs (*i.e.*, $72,723.84 less than the lodestar figure), the Court finds that the lodestar approach supports the fee request. However, the Court notes that the fee request does represent a fairly high percentage of the total settlement amount in this case. Specifically, the fee request ($260,000) constitutes approximately 45 percent of the total settlement amount ($575,000). Although this is a fairly high percentage, courts have approved fees constituting a similarly high percentage of the total settlement amount where the lodestar approach supports it. *See, e.g.*, *Edelen*, 2013 WL 3816986, at *11–15 (approving a fee request that constituted approximately 47 percent of the total settlement amount where counsel was seeking fees that were $11,000 less than the reasonable lodestar figure).

The Court also notes two case-specific circumstances not directly raised by the *Kimbrell's* factors or the lodestar approach that support the fee request. First, the fact that no class members have objected to the fee proposal suggests the fee request is reasonable, at least from the perspective of class members. *See Boyd*, 299 F.R.D. at 464. Second, the fact that Judge Connelly—who became intimately familiar with the facts and history of this case during the settlement negotiations—views the fee request as "fair and reasonable" provides additional but unnecessary support that the fee request is reasonable. (*See* Connelly Certification at 4.)

Finally, the Court also addresses the request for costs. Costs that may be charged include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to

12

a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Here, Plaintiffs' counsel requests $16,890.09 in costs, which includes costs associated with depositions, a filing fee, process server fees, arbitration fees, and the claims administrator fees. (Attorneys' Fees Mem. at 1.) These expenses are all typical and reasonable.

For all of these reasons, the Court will approve the proposed attorneys' fees and costs.

## VI.   *Conclusion*

For the foregoing reasons, an order shall enter granting Plaintiffs' Joint Motion for Final Approval of the Settlement.

DATED this 29th day of July, 2020.

BY THE COURT:

James K. Bredar
Chief Judge

13